**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ISAIAS SOLER | |
| v. | CIVIL ACTION NO. 3:06cv1588 (SRU) |
| UNITED STATES OF AMERICA | |

**RULING ON MOTION TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE**

After approximately three days of trial and an extensive plea colloquy, Isaias Soler pled

guilty to multiple counts of an indictment charging him with felony offenses, including VCAR

(Violent Crime in Aid of Racketeering) murder ("count three"). VCAR murder carries a

mandatory minimum penalty of life imprisonment pursuant to 18 U.S.C. § 1959(a)(1), and

pursuant to the federal Sentencing Guidelines. Soler subsequently moved to withdraw his guilty,

arguing that his plea was invalid because his attorney was constitutionally ineffective, and

because he did not understand the consequences of pleading guilty. I denied Soler's motion,

*United States v. Soler*, 289 F. Supp. 2d 210, 217 (D. Conn. 2003) ("*Soler I*"), and the Second

Circuit affirmed, *United States v. Soler*, 124 Fed. Appx. 62, 65 (2d Cir. 2005) ("*Soler II*"). Soler

now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the

instant motion, he raises several additional ineffective assistance of counsel claims. For reasons

that follow, the motion is denied.

**I.      Background**

As an initial matter, I assume familiarity with *Soler I* and *Soler II*. Very briefly, a few

days after Soler's trial began, he chose to plead guilty. I held an extensive plea colloquy in which

I informed Soler of the nature of the charges against him. Of particular relevance, I went to great

lengths to ensure that Soler understood that he faced a mandatory life term of imprisonment on count three if he pled guilty. Soler indicated multiple different times that he understood the charges to which he was pleading guilty. Soler also fully understood that, although he had explored the option of entering into a cooperation agreement, the government had not offered Soler an agreement, and that the government could not be compelled to offer him a cooperation agreement in the future. He ultimately pled guilty to the charges, including count three, and I accepted his plea. In denying his motion to withdraw his plea, I found that Soler's plea:

> was knowing and voluntary, he understood that Count three required a mandatory term of life imprisonment, he had discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel.

*Soler I*, 289 F. Supp. 2d at 216.

Soler appealed, arguing that, among other things, "it was vitually per se ineffective assistance for counsel to recommend that he plead guilty to a count that carried a mandatory term of life imprisonment (when he did not face the death penalty), particularly without having secured a cooperation agreement with the government." *Soler II*, 124 Fed. Appx. at 64. The Second Circuit affirmed *Soler I*, however, holding that "[a]s Soler was . . . aware of some of the actual evidence, and as there was a possibility that a plea of guilty at that point might facilitate his negotiating a favorable cooperation agreement, Soler has failed to show that counsel's recommendation fell below an objective standard of reasonableness." *Id.*

Soler now raises three additional ineffective-assistance-of-counsel claims. First, Soler argues that his counsel "tricked" him into pleading guilty by "telling [him] he would argue a [sic] self-defense on count three at sentencing." Soler's Motion to Vacate at 5. Second, Soler argues

that his counsel failed to "file a motion seeking a psychiatric evaluation." *Id*. at 6. According to

Soler, "[a] competent attorney would have adequately investigated" his mental history. *Id*.

Finally, Soler argues that his attorney recommended he plead guilty to all counts so he could

cooperate with the government and avoid a life sentence, but that his attorney "failed to secure a

cooperation agreement." *Id*. at 8.

**II.     Discussion**

A.       The *Strickland* Standard for Ineffective Assistance of Counsel

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), noted that the

"right to counsel plays a crucial role in the adversarial system embodied in the Sixth

Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the

ample opportunity to meet the case of the prosecution to which they are entitled." *Id*. at 684

(internal quotations omitted). "The Sixth Amendment recognizes the right to assistance of

counsel because it envisions counsel's playing a role that is critical to the ability of the

adversarial system to produce just results. . . . For that reason . . . the right to counsel is the right

to effective assistance of counsel." *Id*. (internal quotations omitted). "Counsel can deprive a

defendant of the right to effective assistance, simply by failing to render 'reasonably competent

advice.'" *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)).

The *Strickland* Court set forth a two-pronged analysis to determine whether a lawyer's

representation was constitutionally ineffective. "[I]n order to prevail on an

ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's

performance fell below an objective standard of reasonableness, and (2) that as a result he

suffered prejudice. Both prongs of this test must be met." *United States v. Jones*, 455 F.3d 134,

151 (2d Cir. 2006).

In applying *Strickland*, courts must resist a natural temptation to play Monday-morning quarterback. *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991). "It is not our task to 'call the plays' as we think they should have been called." *Id*. To the contrary, courts must "evaluate the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, and "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Kieser v. New York*, 56 F.3d 16, 18 (2d Cir. 1995) (per curiam) (internal quotations omitted).

B.       Claim One: Arguing Self-Defense at Sentencing

Soler claims that his attorney tricked him into pleading guilty to the VCAR murder by assuring him he would be able to plead self defense at sentencing. Although it is substantially unclear from the record in this case that his attorney ever gave Soler that advice,[1] I will assume for purposes of this motion that he so advised Soler.

It is a fundamental proposition that a district court does not have general discretionary authority to downwardly depart from statutory minimum penalties prescribed for the crime of conviction. "Any deviation from the statutory minimum sentence can *only* be had through the specific procedures established through 18 U.S.C. §§ 3553(e) [and] 3553(f)." *United States v. Medley*, 313 F.3d 745, 749 (2d Cir. 2002) (emphasis added). Specifically, a district court may impose a sentence of imprisonment below a statutory minimum only if: "(1) the government makes a motion pursuant to 18 U.S.C. § 3553(e) asserting the defendant's substantial assistance

---

[1] Neither party has submitted an affidavit from Soler's counsel.

to the government; or (2) the defendant meets the 'safety valve' criteria set forth in 18 U.S.C. § 3553(f)." *Id*. By pleading guilty to the VCAR murder, Soler could not argue for a sentence below the statutory minimum penalty of life imprisonment, absent a motion from the government and absent safety-valve eligibility. If Soler's counsel advised otherwise, such advice was ill-conceived and could not have been, under any circumstances, a reasonable strategic decision. Assuming he gave the advice, Soler's attorney's performance would have fallen below an objective standard of reasonableness.

Nevertheless, even if Soler's attorney had informed him that he could argue for a lesser sentence, that error did not prejudice Soler for at least a two reasons. First, despite what his counsel allegedly informed Soler prior to his plea colloquy, Soler, at the colloquy, indicated that he understood the mandatory minimum penalty for the crime to which he was pleading. The transcript of the colloquy is replete with examples showing that Soler understood the concept of a mandatory life sentence, a few of which are particularly noteworthy. When asked, "do you understand that with Count Three that there is a mandatory life imprisonment penalty that applies," Soler responded affirmatively. Tr. 1/9/02 at 11. Soler also responded affirmatively when asked if he understood that he was "going to be facing for example on count three, mandatory life" and that "if you have a mandatory life sentence, it doesn't matter what the guideline range says because that statute is going to be more important. It's going to apply rather than the guidelines." Tr. 1/9/02 at 34. Finally, I inquired about the language in the plea letter:

> THE COURT: Mr. Hernandez, let me just inquire whether -- and Mr. Truebner as well, whether either of you believe that the third count, penalty for the third court on page two at the top [of the plea agreement letter] should reflect a mandatory lifetime imprisonment? I know we've discussed that in court. Do either of you believe that the plea agreement letter needs to be amended?

> MR. HERNANDEZ: I don't think so. I think it says at the top the penalty is lifetime imprisonment. It's not up to lifetime, it's mandatory lifetime imprisonment. We've discussed that with counsel and I believe the defendant and counsel understand that that's what that means.
>
> THE COURT: Mr. Truebner?
>
> MR. TRUEBNER: That is correct, Your Honor, and that was a change from a previous draft agreement which had the words 'up to life,' up to life imprisonment, and now it turns out that the statute makes that mandatory so I think that's understood by all the parties.

*Soler I*, 289 F. Supp. 2d at 212. I then inquired whether Soler understood the terms and conditions of the plea letter prior to signing it, and he again responded affirmatively. In short, regardless of any misconceptions that Soler may have had prior to the colloquy about the court's ability to give him lesser sentence than life imprisonment, the colloquy cured those misconceptions, and Soler's sworn statements at the colloquy indicated that he understood the mandatory minimum penalty for the charge to which he was pleading was life imprisonment.

Second, there is no support for the proposition that Soler would not have pled guilty even if his attorney had properly advised him that the court did not have discretion to downwardly depart from the statutory minimum. Soler's own motion, and the record in this case, clearly indicate that Soler's main reason for pleading guilty was that he believed that obtaining a cooperation agreement from the government was his best chance to avoid a mandatory life sentence, not because he believed he might be able to receive leniency at sentencing. Although it may have given him an additional reason to plead guilty, it is clear that his lawyer's ill-conceived advice, if he gave it, was not the driving force behind Soler's guilty plea. Because there is no evidence to indicate that Soler would not have otherwise pled not guilty, the outcome of his case would not have been different, and Soler was not prejudiced by his attorney's advice. Soler has

thus not met the standard set forth in *Strickland*.

      C.      <u>Claim Two: Failure to Seek a Psychiatric Evaluation</u>

Soler also claims that his attorney was constitutionally ineffective because he failed to seek a psychiatric evaluation. He alleges that "his mental capacity was far below normal compared to those around him," and that if his attorney had conducted an evaluation, his condition would have cast "reasonable doubt on the governments [sic] case against Movant which in turn might have had Movant pursue going to trial instead of pleading guilty." *Id*. at 4-5. He further argues that the diminished mental capacity would have "established factual or legal innocence," and would have precluded his rendering of a "knowing and intelligent plea." *Id*. at 4-5.

Soler's assertion that his psychiatric condition rendered his plea involuntary is belied by the record in several respects. First, Soler has not supported his assertion that he had a mental impairment, nor has he indicated the particular mental impairment from which he suffers. Second, at his plea colloquy, Soler himself indicated, his counsel agreed, and I found, that he was competent to proceed with the change of plea proceeding:

> THE COURT: Are you now or have you recently been under the care of a doctor or a psychiatrist?
>
> THE DEFENDANT: No.
>
> THE COURT: Have you in the last two days taken any narcotic drugs, prescription medication or consumed any alcoholic beverages?
>
> THE DEFENDANT: No.
> . . .
>
> THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Do you understand what's going on?

THE DEFENDANT: Yes

. . .

THE COURT: And, Mr. Truebner, have you had any difficulty communicating with the defendant today?

MR. TRUEBNER: I have not, Your Honor.

THE COURT: And do you believe that he understands the implications of pleading guilty?

MR. TRUEBNER: I believe he does. We've had extended discussions, particularly in the course of the last week, but even dating back several months when the first proposed plea agreement was generated.

THE COURT: And do you believe he's competent to proceed with a change of plea?

MR. TRUEBNER: Absolutely

Tr. 1/9/02 at 5-6.

Finally, other than his conclusory statements, Soler fails to allege how or why any mental affliction affected his decision to plead guilty, or would have increased his chances to receive a favorable verdict at trial. For example, he does not allege that, if his attorney had arranged for a psychiatric evaluation, he would have been found insane, and would thus have had a valid insanity defense. Further, even if Soler could have, in good faith, pled not guilty and relied on an insanity defense, he has not supported the proposition that the availability of that affirmative defense rendered his decision to plead guilty an unreasonable strategic decision. In other words, he may have decided to plead guilty anyway. Consequently, Soler has failed to meet his burden on either prong of the *Strickland* analysis.

D.      Claim Three: Pleading Guilty Without First Obtaining a Cooperation Agreement

Soler argues that his attorney was constitutionally ineffective because he advised him to plead guilty without first obtaining a cooperation agreement.

It is important to note that the government has the sole discretion to offer, or not to offer, a defendant a cooperation agreement. *See* 18 U.S.C. § 3553(e). It is also important to note that Soler was not promised that he would receive a cooperation agreement if he pled guilty. At the plea colloquy, I engaged in the following dialogue with Soler and his attorney:

> MR. TRUEBNER: If it please, your Honor, the defendant through me has had conversations with the government about possible cooperation and how that cooperation, or at least the opportunity to cooperate may be the basis of getting away from the mandatory life sentence. There have been no specific promises, no guarantees or anything else, but I think just so the record is clear, the defendant is certainly aware of that opportunity and intends to pursue it. Whether or not it amounts to anything or helps him at the end of the day, no one can say and no one's made any promises.
>
> THE COURT: All right. On that point, Mr. Soler, I want to just make sure you understand a couple of things. One is that there is no agreement that you be permitted to cooperate in any way, and even if at some point in the future an agreement does develop . . . it is the government's decision whether any information you provide to them is sufficient to cause them to want to make a motion that would give you the relief that you're seeking. And they can always decide not to make the motion and your lawyer can't require them to make that motion and I can't require them to make that motion. That's their decision. Do you understand that?
>
> THE DEFENDANT: yes.

Tr. 1/9/02 at 25-26.

In this case, Soler made a choice between two options, neither of which was ideal: (1) he could continue with his trial, put the government to its burden of proof, place his fate in the hands of a jury, and risk an adverse verdict; or (2) he could plead guilty without a cooperation

-9-

agreement, place his fate in the hands of the government, hope that the prosecution would offer him a cooperation agreement, and risk that he would not receive an agreement. After having observed several days of his trial, and after having communicated with the prosecutor's office about obtaining a cooperation agreement, Soler and his attorney were in a good position to assess the risks to both courses of action. As a strategic matter, Soler chose the latter course of action because he believed it was his best chance to avoid a life sentence. His decision was not unreasonable: it was a necessary choice between two bad options. The mere fact that Soler, through his choice, could not achieve his desired result does not render the choice unreasonable. Courts must resist the temptation to second-guess reasonable strategic decisions. Because Soler's choice was reasonable, Soler has failed to satisfy his burden that his counsel's representation fell below an objective standard of reasonableness,[2] and thus his *Strickland* claim must fail.

## III.     Conclusion

For the foregoing reasons, Soler's ineffective assistance of counsel claims are without

---

[2] In *Soler II*, the Second Circuit noted that "[a]s Soler was then aware of some of the actual evidence, and as there was a possibility that a plea of guilty at that point might facilitate his negotiating a favorable cooperation agreement, Soler has failed to show that counsel's recommendation fell below an objective standard of reasonableness." *Soler II*, 124 Fed.Appx. at 64.

merit.  His motion to vacate his sentence **(doc. # 1)** is **DENIED**.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 1ˢᵗ day of May 2007.

  /s/ Stefan R. Underhill    

Stefan R. Underhill

United States District Judge
